IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF: | * | NO. 10-13553 |
| | * | |
| PORTER, GEORGE J. | * | |
| PORTER, ARALEAN H. | * | SECTION A |
| | * | |
| *Debtors* | * | CHAPTER 7 |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### MEMORANDUM IN OPPOSITION TO CREDITOR'S MOTION FOR RELIEF FROM AUTOMATIC STAY

**NOW INTO COURT,** through undersigned counsel, comes Debtor and Adversarial Proceeding Defendant, George Porter, Jr. ("Porter" or "Debtor"), who is joined in this pleading by Brian Stoltz ("Stoltz"), David Russell Batiste ("Batiste"), and Porter-Batiste-Stoltz, LLC ("PBS" or "Band/LLC")( (collectively and/or individually "Artists")[1], who hereby submit this Memorandum in Opposition ("Opposition") to Creditor, Highsteppin' Productions, LLC's ("HSP") Motion For Relief From Automatic Stay ("Motion"). For the reasons more fully set forth below, the Motion lacks legal and factual efficacy, and should be denied, in its entirety, with prejudice, and at Creditor's sole cost.

**I.    The Motion Is Moot**

As an initial matter, the Artists respectfully submit that HSP's Motion is moot, by virtue of the removal of the Removed Massachusetts Proceeding to the USDC-EDLA, and its subsequent referral to this Honorable Court by USDC-EDLA Chief Judge Vance, pursuant to 28

---

[1] The Artists are named defendants in a lawsuit originally filed against them by HSP in the United States District Court for the Eastern District of Massachusetts, bearing Docket Number 09-12208-NMG ("Removed Massachusetts Proceeding"). The Removed Massachusetts Proceeding was removed to the USDC-EDLA, assigned Civil Action No. 10-04385-SSV-JCW, and then referred to this Honorable Court in conjunction with the currently-pending Title 11 proceeding (seeking Chapter 7 relief), bearing Bankruptcy Action Number 10-13553 "A", and assigned Adversarial Proceeding Number 10-AP-01130 therein.

1

U.S.C. § 157, where it has been designated as an Adversarial Proceeding, and assigned Docket Number 10-AP-01130 in this proceeding, EBLA Docket Number 10-13553 "A". As such, that proceeding has now been subsumed into, and designated as an adversarial proceeding within, this bankruptcy proceeding, obviating the requested relief from the automatic stay. Thus, the Motion is moot and should be denied.

## II.   HSP's Factual Recitation Is Deficient, Erroneous And Misleading

The Artists respectfully submit that the "<u>FACTS</u>" section of HSP's supporting memorandum ("Memo") is not only grossly deficient, but also contains erroneous and misleading assertions, and as such, is little more than unsupported argument of counsel masquerading as purported fact. The following are just a few glaring examples of the "fast and loose" nature of HSP's representations:

1) HSP claims that the Personal Management Agreement ("Agreement"), *Exhibit "A"*, was entered into between HSP and the three individual artists (Porter, Batiste and Stoltz), and completely omits the fact that the Agreement was actually between HSP and PBS, LLC (as well as the three members thereof), and was for the management of PBS, LLC activity only (**and not for the management of any of the member's solo careers or projects; in fact, those activities are expressly excluded from the Agreement).** *Exhibit "A", ¶ 4;*

2) HSP's recitation that "[T]he Artists created a band called Porter Batiste Stoltz. They also created a company called Porter Batiste Stoltz, LLC, to manage the business", is quite misleading, as it comes after HSP's statement that the Agreement was entered into in May, 2006, and thus insinuates, erroneously, that the Band/LLC was formed **after** the Agreement. To the contrary, the Band/LLC was created in 2003, well before HSP's owner, Phil Stepanian ("Stepanian"), ever contacted PBS or otherwise pursued a business arrangement with the Band. *Exhibits "B", "C".*

3) HSP has failed to mention that the Agreement was for an initial 2-year term, with an irrevocable, 18-month renewal term in HSP's favor, and then additional 1½-year options to renew. Rather, HSP improperly attempts to insinuate that Artist Porter terminated the Agreement in bad faith, when in reality, Porter exercised his express right, as set forth in the

        Agreement, not to exercise any subsequent options to renew[2].

4)    HSP has blatantly misrepresented that "[I]n 2009, HSP refused to provide any further advances, loans, or deferments," and tries to insinuate that Porter then acted in bad faith be exercising his right not to renew the Agreement. *Memo, p. 2, ¶ 2* (the Memo lacks actual page numbers). **This representation is flatly belied by Stepanian's own e-mail of 11/14/08 @ 3:14 p.m., authored a year before Mr. Porter's exercise of his right not to renew the Agreement, which states:**

> Over the past few years I have made an enormous investment in everything that is Highsteppin' Productions. Simply said, nothing means more to me than our artists, crew members and our office staff. And now, more than ever, I am sure that we are closing in on achieving many of our goals. **However, my current financial situation requires that I make some immediate changes. Unfortunately, one of those changes is that I will no longer be able to provide a bi-weekly draw to each of you.**

        *Exhibit "D"* (emphasis added).

5)    HSP incorrectly states that "only one debtor, George Porter, Jr., is involved in the HSP case as a defendant," *Memo, p. 5, ¶ 2,* when in actuality, HSP is fully aware that Brian Stoltz, one of the three Band/LLC members, has also filed for Chapter 7 relief, EBLA Docket No. 10-13554 ("Stoltz Bankruptcy Proceeding"), by virtue of HSP's (through counsel) and Stepanian's recent attendance at the creditor's meetings held last month in both this proceeding and in the Stoltz Bankruptcy Proceeding. As such, HSP's knowing misrepresentation is both troubling and defies logic.

**6)**    Perhaps the most glaring false representation/omission made by HSP in its Memo, is the statement that Porter's "sole purpose for filing bankruptcy was to frustrate the DCA and not due to any dire financial position." *Memo, p. 7, ¶ 2.* Setting aside the obvious fact that Band/LLC member Stoltz has also sought Chapter 7 protections, what is most astounding about this false representation is HSP's abject failure to inform this Court that the Massachusetts court had entered a preliminary injunction entered

---

[2] Porter's lawful exercise of his right not to renew the Agreement was based, in part, on HSP and Stepanian's admitted failure to provide accounting information to the Artists, as HSP was obligated to do under the Agreement, and came almost a year **after** HSP's decision to stop providing "advances." *Exhibit "D"* (e-mails of 11/14-15/08). The Agreement expired, as per its terms and conditions, on November 7, 2009, pursuant to timely written notification of non-renewal, which HSP previously admitted it received "[o]n or about September 11, 2009." *Removed Massachusetts Proceeding Docket Sheet, Complaint, PACER No.1, ¶ 34; Amended Complaint, PACER No. 14, ¶ 37.*

against the Band and all three members (including Porter), **that was, in essence, a pre-judgment writ of attachment that required Porter to escrow at least 25% of his net, and in certain cases 25% of his gross, gig-related income, and 70% of all royalty income.** *Exhibit "E"*. Thus, prior to seeking Chapter 7 relief, Porter had escrowed approximately $25,000.00 of his earnings from gigs, and has had 100% of his royalty income withheld since January 2010, at HSP's behest and with HSP's full knowledge. HSP's failure to provide that information to this Court, when combined with HSP's fantastical assertion of bad faith, also defies logic and at the very least, distorts the true facts and circumstances of this matter.

### III. The Artists' Factual Assertions

The following facts, as alleged in the Artists' Counterclaim (which is a bankruptcy asset in so far as Mr. Porter's and Mr. Stoltz's share of recovery is concerned), are provided to this Court, in contrast to HSP's questionable omissions and misrepresentations. The Artists, all of whom are Louisiana-born and Louisiana-based professional musicians (and a Louisiana LLC), who have never resided in Massachusetts, all enjoyed a respectable degree of success in their careers, prior to becoming involved with HSP. Prior to becoming ensnared in HSP's chicanery and mis-management, the Band/LLC was earning at least $72,000.00 per year and was generating income for its members. *Exhibit "A", ¶ 1(b)*. Unfortunately for them, after three and one-half years under HSP's dubious tutelage and aegis, the Artists allegedly owe HSP more than $550,000.00 for alleged expenses, advances, loans, etc[3]. HSP was not even in existence when Stepanian made his initial contact with Porter, nor when he first met the Artists at a wedding gig in January 2005[4], but was created thereafter, apparently to facilitate Stepanian's fledgling foray into the artistic management arena, on June 13, 2005. *Exhibit "F"* (Commonwealth of

---

[3] HSP has failed to provide any proof that the Artists approved any of the alleged expenses, advances, etc. despite the Agreement's express requirement that the Artists must approve any single expense in excess of $750, and any aggregate monthly expenses above $2,000.00. *Exhibit "A", ¶ 6(b)*.

[4] Stepanian's e-mail of January 18, 2005, establishes that he made initial contact with Defendant Porter, in connection with an engagement PBS was playing at a wedding in Florida, ostensibly to discuss "marketing ideas for your bands." *Exhibit "B"* (Stepanian e-mail of 1/18/05 to Porter).

4

Massachusetts Secretary of State website printout regarding status of Highsteppin'). Moreover, HSP had been subject to involuntary dissolution, as of April 30, 2009, almost eight (8) full months before the commencement of this litigation[5], for its failure to file annual reports from 2006 through 2009.

Paragraph 6(b) of the Agreement specifically stated that: 1) PBS "will not be responsible for any portion of [HSP's] overhead expenses; 2) PBS would only "be responsible for [its] pro rata share of [travel] expenses when such expenses were jointly incurred on behalf of PBS and HSP's other client Bonerama); 3) HSP "**shall not incur without [PBS'] prior consent (A) any single expense in excess of Seven Hundred Fifty Dollars ($750) Dollars [sic] or (B) aggregate monthly expenses in excess of Two Thousand ($2,000) Dollars**". **No documentary proof of that necessary approval has been provided by HSP**.

Also, while pursuing the Artists, Stepanian repeatedly represented that he wanted to HSP to provide an "artist-controlled environment," which, if true, would have been consistent with the long-established business paradigm utilized in entertainment and artistic enterprises whereby artists maintain control, final decisions and operate their business as an Artist Team, while using representatives, managers and agents who extend the Artist team's interests in artist-operated and controlled live performance and direct recording distribution arrangements. However, these representations were ultimately proven, by HSP and Stepanian's actions, to be false, as the Band/LLC went from a self-managed entity which operated successfully within its means, to an entity (along with its members) which, after being "managed" by HSP for 3 and ½ years, allegedly owes in excess of $550,000.00.

Prior to HSP's involvement, the Artists successfully conducted their business, prepared tour budgets, computed and paid costs, and then divided net profits on an ongoing basis without

---

[5] HSP sought, and obtained, reinstatement after commencement of the Removed Massachusetts Proceeding.

5

dispute or incurring any significant, lingering business debt, as each PBS performance and business activity generated "positive cash flow" for each of its three members. The Agreement, second unnumbered paragraph, specifically acknowledged that HSP's compensation was "determined in such manner as **will permit Highsteppin' to accept the risk of failure**" regarding PBS' career. However, HSP improperly sought to shift that risk to the Band/LLC by virtue of the Removed Massachusetts Proceeding, and both Porter and Stoltz have resultantly needed to seek Chapter 7 relief[6].

The Artists assert that Stepanian and HSP thus mismanaged PBS, a reasonably profitable partnership prior to entering into the Agreement at issue, and have embroiled Artists in litigation and forced them into bankruptcy, due to inexperience and increasingly irrational, undocumented, unwritten and unjustified business decisions and activities that negated the Artists' ability to profit from their musical careers, while jeopardizing the Artists' ownership of their homes, royalties, and other possessions and assets acquired prior to executing the Agreement, as well as doing harm to Artists' personal and business reputations in a highly "reputation-based" industry.

## IV.     The Automatic Stay Should Not Be Lifted; No Cause Exists

As set forth above, the Artists respectfully submit that HSP's request for relief from the automatic stay is moot by virtue of the removal of the Removed Massachusetts Proceeding to this Court, and the docketing of same as an Adversarial Proceeding herein. Further, *arguendo*, and without waiver of their position regarding mootness, the Artists contend that even if the issue is not moot, there is no cause or justifiable reason to lift the stay.

### A.     The Claims Arise In, Under And Are Related To This Bankruptcy Case

There is no doubt that the automatic Stay is applicable and proper, as this matter involves

---

[6] Mr. Batiste, the third member of the Band/LLC, has not **yet** sought Chapter 7 relief, apparently because he is does not own any appreciable assets such as a home or royalties, and thus, is essentially judgment-proof.

6

provable debts; the Artists claims against HSP arise out solely from the Agreement (a contract), and HSP's claims against PBS, LLC and the individual artists also arise solely from the Agreement. Further, any negligence-based tort claims, which clearly have not been reduced to judgment at the time of the bankruptcy filing, are also provable, as the Removed Massachusetts Proceeding was commenced and pending as of the date Debtor filed for bankruptcy protection. *11 U.S.C. § 103a(4), (7) and (8); Bankruptcy Rule 401(a).* The Artists respectfully assert that the Stay, which is broad in scope, should be liberally applied.

Bankruptcy Courts have jurisdiction over three types of claims: (i) those that "arise in" the Case, (ii) those that "arise under" the Bankruptcy Code, and (iii) those that are "related to" the Case. *28 U.S.C. § 1334(b)*; *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir.1987). Moreover, *11 U.S.C. § 110(a)(6)* provides that the trustee of the estate of the bankrupt is vested by law with the title of the bankrupt as of the date of the filing of the bankruptcy petition of all the debtor's rights of action arising upon contracts, which in this case include the Debtor/Artists' claims, as asserted in the Counterclaim they previously filed in the Removed Massachusetts Proceeding, against Creditor HSP.

Thus, the Counterclaim, and arguably HSP's claims against PBS, LLC and the Artists as well, "arise in" the Case and/or "under" the Bankruptcy Code, as the Trustee's legal right to pursue the Counterclaim is both founded directly in this Case, and is authorized under the Bankruptcy Code. Further, under any analysis, the Counterclaim and HSP's claims against the Artists undoubtedly are "related to" the Case, since the outcome of that dispute will have a direct effect on the Debtor's estate being administered in bankruptcy. *See Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *In re El Paso Refinery, L.P.,*

302 F.3d 343, 348 (5th Cir.2002) (stating that a matter is "related to" a bankruptcy case "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy") (quoting *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 752 (5th Cir.1995)). HSP's Motion should be denied for this reason, in addition to the mootness grounds for denial.

### B. No Cause Exists To Lift The Stay

The facts of each request will determine whether relief is appropriate under the circumstances. *H.R.Rep. No. 95-595, 95th Cong., 1st Sess., 343-44 (1977)* (emphasis added). When relief from the automatic Stay is sought, the party seeking the relief, HSP, has the burden to demonstrate cause for relief. *In re RCM Global Long Term Capital Appreciation Fund. Ltd.,* 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996); *In re Stranahan Gear Company, Inc.,* 67 B.R. 834, 836-37 (Bankr. E.D.Pa. 1986). The Bankruptcy Code does not specifically define "cause" regarding a request for relief from the Stay, other than "lack of adequate protection," but the legislative history to the provision indicates that the illustrations of "cause" provided therein do **not** apply to the matter *sub judice*.

The lack of adequate protection of an interest in property of the party requesting relief from the stay can be a cause, but HSP's interest can be, and actually have been, protected, as the Removed Massachusetts Proceeding can either be litigated in this Court or referred back to the USDC-EDLA if this Court deems that mechanism appropriate. Also, as mentioned above, there is a clear connection between HSP's claims and this bankruptcy Case, and Debtor is neither a fiduciary nor do HSP's claims involve any post-petition activities of the Debtor. *Id.* Further, this bankruptcy Case was **not** filed on the eve of trial, and in fact, the Removed Massachusetts Proceeding is in its nascent stage, as no depositions nor substantial discovery has yet been conducted.

8

Additionally, HSP, as an unsecured creditor, is **not** seeking to recover non-estate property, such as insurance proceeds. Rather, HSP's attempt to force the liquidation of, or otherwise obtain, bankruptcy estate assets, such as Debtor's home and/or publishing rights covering 45 years of creative effort, will undoubtedly prejudice the bankruptcy estate. *Id.; see also, In re Borbidge,* 81 B.R. 332 (Bkrtcy.E.D.Pa.1988); *In re Honosky,* 6 B.R. 667 (Bkrtcy.S.D.W.Va.1980). Rather, the Debtor is entitled to, and should be accorded, protection from his creditors, including HSP.

**C.     HSP's Unliquidated And Contingent Claims Belong In This Court**

Bankruptcy Courts frequently consider the issue of determining liability and valuing claims. In *Matter of McGraw,* 18 B.R. 140 (Bkrtcy. W.D.Wis. 1982), creditors sought to terminate the automatic stay to proceed with litigation of a personal injury case arising from an automobile accident. The Court analyzed whether the protection afforded a debtor in bankruptcy should be modified and reduced. Noting that both the U.S. Congress and federal bankruptcy courts have recognized that relief from the *11 U.S.C. § 362* stay may be permissible in some **limited** circumstances, the *McGraw* court indicated that lifting the *11 U.S.C. § 362* stay might be appropriate if the following two conditions were met: (a) no "great prejudice" to either the bankruptcy estate or the debtor must result from the continuance of the non-bankruptcy action; and (b) the hardship to the plaintiff caused by the continuance of the stay considerably outweighs the hardship caused to the debtor by modification of the stay. "Great prejudice" results if the debtor/bankrupt is held personally liable, for purposes of collection, for a civil damage award. *See Matter of McGraw,* 18 B.R. at 143, citing *In re Terry,* 12 B.R. 578, 581 (Bkrtcy. E.D.Wis. 1981).

In the instant matter, some elements of "great prejudice" clearly exist. Although the

9

Artists recognize that bankruptcy courts can, under certain circumstances, lift the Stay to allow tort suits to go forward in state court to determine the liability, if any, of the Debtor, frequently, these actions are coupled with a pledge by the creditor that he only seeks to go forward to determine the liability and that such liability will be paid by the liability insurance carrier and there is no expense to the estate. *Id.* That is not the situation in this Case, and in fact, the opposite is true, and HSP's Motion should be denied, as it has not shown sufficient cause. If the Stay is lifted, Debtor will be forced to personally defray the substantial cost of defending a lawsuit in Massachusetts, including the cost of considerable discovery (no depositions and limited written discovery has been conducted to date). Moreover, the bankruptcy estate will be prejudiced as the Counterclaim, an undeniable estate asset, would have to be litigated in Massachusetts, as opposed to the proper forum; this Honorable Court.

Given that a cause of action is a "claim" within the meaning of Bankruptcy Code, which must be adjudicated under the bankruptcy umbrella, and that the automatic stay applies, HSP's Motion should be denied. *In re Johns-Manville,* 57 B.R. 680 (Bkrtcy. S.D.N.Y. 1986), citing *In re Johns-Manville,* 57 B.R. 680 (Bkrtcy.S.D.N.Y.1986). Further, damages which are considered unmatured, unliquidated and contingent, are subsumed within the definition of a claim. *See also, In re All Media Properties, Inc.,* 5 B.R. 126 (Bankr. S.D.Tex. 1980), aff'd, 646 F.2d.193 (5th Cir.1981). As stated in *All Media Properties,* "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event." *Id.* at 133.

Thus, HSP's claims, which are disputed by Debtor/Artists are contingent and unliquidated because there has been no determination yet as to Debtor/Artists' possible liability and, thus, those claims should be adjudicated in the Bankruptcy Court. *Id.; see also 11 U.S.C.A.*

*§ 502(c); In re Columbia Gas Transmission Corp.,* 219 B.R. 716 (S.D.W.Va. 1998) (holding that an automobile accident victim, who had not received notice of the bankruptcy before suing a Chapter 11 debtor (whose plan had been confirmed) for injuries that she allegedly sustained pre-confirmation but post-petition due to slippery conditions arising from the runoff of water from the debtor's gas well road, **would not be allowed to proceed with her suit against the debtor solely for the limited purpose of establishing debtor's liability and recovering from debtor's insurer where the debtor rather than the insurer would be liable for the cost of the defense of the suit and defense would violate the fresh-start policy of the Bankruptcy Code**. (Emphasis added). Again, HSP's Motion should be denied.

### D.    The *Sonnax/Curtis* Factor Analysis Requires Denial Of HSP's Request

In *In re Abrantes,* 132 B.R. 234 (N.D.N.Y.1991), the Court opined that, in the wake of *In re Sonnax Indus., Inc.,* 907 F.2d 1280 (2nd Cir.1990), "there is no doubt that a court's determination of whether a movant has met its burden of proof on the issue of "cause" must include an analysis of the *Curtis* factors." Upon concluding that neither the statute nor the legislative history defined "cause," the Second Circuit looked to case law for guidance. Quoting, with approval, *In re Curtis,* the *Sonnax* Court listed twelve factors that should be considered when deciding whether to deny a request to lift the automatic Stay. Those factors are:

    (1) whether relief would result in a partial or complete resolution of the issues;

    (2) lack of any connection with or interference with the bankruptcy case;

    (3) whether the other proceeding involves the debtor as a fiduciary;

    (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

    (5) whether the debtor's insurer has assumed full responsibility for defending it;

    (6) whether the action primarily involves third parties;

11

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and balance of harms.

*In re Abrantes, id.* at 237, citing *In re Curtis,* 40 B.R. 795, 799-800 (Bankr. D.Utah 1984).

An analysis of those factors requires the denial of HSP's Motion. Factors 3, 4, 5, 6, 7, 8, and 11 are all fully in Debtor's favor, and thus all decidedly tilt in favor of denial of the Motion. There can be no genuine dispute that: 1) the Debtor is **not** a fiduciary in the Removed Massachusetts Proceeding; 2) no special tribunal has been established; 3) the Debtor has no insurer nor anyone who has assumed full responsibility (let alone **any** responsibility) for Debtor's defense; 4) the Removed Massachusetts Proceeding does not primarily involve third parties; 5) litigating in another forum could significantly prejudice the interests of other creditors, as it could arguably impact, usurp or otherwise impinge estate assets and/or delay resolution of this bankruptcy; and 6) the parties are nowhere near ready for trial, and in fact, have barely scratched the surface of discovery.

Moreover, an analysis of the remaining *Sonnax* factors (1, 2, 9, 10 and 12) also require denial of HSP's Motion. Factor 1 weighs in the Debtor's favor as any modification of the stay would not result in complete resolution of the issues, and would arguably delay the Chapter 7

proceeding significantly[7]. There is a clear connection, and significant potential interference, with the bankruptcy proceeding. As set forth above, Debtor (and the Artists) have filed a Counterclaim, which is undoubtedly an asset of the bankruptcy estate, which should be prosecuted in this Bankruptcy proceeding. Moreover, contrary to HSP's erroneous assertion, *Memo, p. 5, ftnt. 2,* the Removed Massachusetts Proceeding is a core proceeding, as it is a proceeding to determine the "validity, extent, or priority of (HSP's alleged) liens," as defined by 28 U.S.C. § 157(b)(2)(K). Concomitantly, the Counterclaim is also a core proceeding which will impact and affect (i.e., determine) the validity and extent of any possible lien against Debtor (and the Artists) by HSP. There is also the significant possibility that any grant of HSP's Motion would interfere with the bankruptcy proceeding, as it undoubtedly would violate the fresh-start policy of the Bankruptcy Code, by requiring the Debtor (and not some third-party insurer) to bear the cost of the defense of the suit (which would clearly be greater if the proceeding were to occur in Massachusetts, even if one were to consider the travel and witness cost only).

      Further, it is highly likely that an avoidable judicial lien would result from the "other proceeding". Although cognizant that HSP's Complaint contains some truncated, "bare-bones", allegations of fraud (which arguably fail to satisfy the FRCP pleading requirements related to such allegations), a review of the Complaint reveals the paucity and implausibility of those allegations (which, quite frankly, appear to have been asserted in a prophylactic, albeit anemic, attempt to avoid bankruptcy jurisdiction). Those allegations essentially state, in circular fashion, that the Artists knew, at the time they executed the Agreement, that they had no intention of ever repaying any advances, loans or expenses (in essence, would not honor the Agreement) and had

---

[7] The Removed Massachusetts Proceeding had been pending in Massachusetts for almost one full year, but there had been no Scheduling Conference or other action by the Court that resulted in any Scheduling Order, Case Management Order, Discovery Order, or other setting of any trial and pre-trial dates, cut-offs or deadlines. *Removed Massachusetts Proceeding Docket Sheet, passim.*

no intention of being so bound. *Removed Massachusetts Proceeding Docket Sheet, Complaint, PACER No. 1, passim; Amended Complaint, PACER No. 14, passim.*

Of course, the irony of those allegations is that, if they are true, which Artists completely deny, then there would be no meeting of the minds and *ergo*, no enforceable Agreement. Moreover, actions speak louder than words; the Artists never requested any loans or advances, Stepanian's 11/14-15/08 e-mail indicates that Stepanian's self-professed "generosity" was, in reality, a personal "enormous investment in everything that is Highsteppin' Productions," which Stepanian unilaterally elected to discontinue, not because of any actions by the Debtor or the Artists, but rather, was necessitated by Stepanian's "current financial situation (which) require[d] that [he] make some immediate changes . . . (and) one of those changes [wa]s that [he] w[as] no longer [] able to provide a bi-weekly draw to" the Artists. *Exhibit "D"*.

Also, the interests of judicial economy and efficiency, as well as the impact of the stay on the parties and the balance of harms clearly mandate denial of HSP's Motion. Contrary to HSP's erroneous statement, the Debtor has **not** retained Massachusetts counsel[8]. Discovery has **not** been "propounded to the various parties", nor is there any "breadth of Massachusetts related discovery". *Memo, p. 5.* In reality, HSP repeatedly sought to jump the gun with discovery, despite the lack of any court-sponsored Scheduling Conference or Rule 26(f) conference. Debtor's counsel objected to the prematurity of HSP's requests, but attempted to comply in a demonstration of good faith. *Exhibit "G"* (e-mails of counsel from 8/10/10, 8/18/10, and 8/19/10). In fact, HSP's counsel's was asked to "provide apposite authority" for his "rejection" of Debtor's position that discovery was premature, but no such "apposite authority" was ever forthcoming. *Id.*

---

[8] Debtor's local Massachusetts counsel, Mr. Charles Gelinas, has acted solely as a *pro haec vice* sponsor, and has never made any appearances nor filed any pleadings beyond sponsoring Messrs. Penton and Pieksen.

14

Debtor then voluntarily, without waiver of his objection, and in a demonstration of good faith, consensually agreed to try and provide discovery responses by date certains (and consensually did provide Initial Disclosures). *Id.* HSP now seeks to imply that Debtor acted in bad faith when filing for Chapter 7 protection to avoid engaging in that discovery, which is as lamentable as it is preposterous, and that assertion is belied by the e-mails of counsel (which, again, HSP selectively provided to this Court, rather than provide a complete picture of the attendant circumstances).

Debtor respectfully submits that, on balance, denial of HSP's Motion is necessary to avoid unnecessary and unwarranted harm to the Debtor, as set forth above. Given today's technologies, depositions and accounting-related discovery can occur as readily in Louisiana as in Massachusetts, and this matter is not heavily dependant on fact witnesses beyond the Band/LLC members, their wives, and their accountants, all of whom are Louisiana-based. Further, Debtor's Counterclaim contains alleged violations of federal copyright law, which a Louisiana court is more than competent to adjudicate. Further, Louisiana courts often are called upon to decide matters based on laws of other jurisdictions, as despite HSP's protestations to the contrary, HSP's case is essentially a garden-variety breach-of-contract case[9]. As mentioned above, the Debtor is entitled to, and should be accorded, protection from his creditors, including HSP; denial of HSP's Motion is warranted.

### V. CONCLUSION

In sum, for the reasons more fully set forth above, HSP's Motion for Relief should be denied in its entirety, with prejudice, and at HSP's sole cost. Alternatively, it is respectfully submitted that this Court may deem it advisable and appropriate to refer certain aspects of this

15

bankruptcy proceeding the USDC-EDLA for proceedings consistent with this Court's handling and disposition of this and Mr. Stoltz' Chapter 7 proceedings.

>Respectfully submitted:
>
>\_\_\_/s/ John O. Pieksen, Jr._____
>John O. Pieksen, Jr. (LA Bar #21023)
>**JOHN PIEKSEN & ASSOCIATES, LLC**
>829 Baronne Street
>New Orleans, LA 70113
>Telephone:    504.581.9322
>Facsimile:    504.324.4844
>jpieksen@cox.net
>**Special Counsel for the Bankruptcy Estate and the U.S. Bankruptcy Trustee, Wilbur "Bill" Babin; and Debtor's Counsel in the Removed Massachusetts Proceeding**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon all counsel of record by ECF filing, facsimile, electronic transmission, and/or by depositing same in the United States mail, properly addressed and postage prepaid, this 13th day of December, 2010.

>\_\_\_/s/ John O. Pieksen, Jr._____

---

[9] Despite HSP's argument of counsel, there has been no credible showing that Massachusetts contract and unfair trade practice law differs significantly from Louisiana's laws on those topics, or that it is so arcane or complicated that a court in Louisiana could not render a fair decision based on it.